Minute Order Form (06/97)

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 90 C 4984 | DATE | SEPTEMBER 26, 2001 |
| CASE TITLE | ROBERT PETIT, et al. v. CITY OF CHICAGO, etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' motion to reinstate dismissed female plaintiffs [265-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 8 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | SEP 27 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | 270 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 9/26/01 date mailed notice | |
| | courtroom CW deputy's initials | 01 SEP 26 PM 5:40 Date/time received in central Clerk's Office | MQM mailing initials | |

DOCKETED
SEP 27 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROBERT PETIT, et al., )
 )
       Plaintiffs, )
 )
v. ) No. 90 C 4984
 )
CITY OF CHICAGO, a municipal )
corporation, )
 )
       Defendant. )

## MEMORANDUM OPINION AND ORDER

      This case involves promotions in the Chicago Police Department ("CPD") and allegations that White police officers were discriminated against in the process. The promotions at issue are promotions to sergeant based on a 1985-88 sergeant promotional examination that produced a 1988 eligibility list used between December 1988 and September 1991. The results of this examination were adjusted for race and there were also out-of-rank-order promotions of Hispanics and women.[1] See generally Petit v. City of Chicago, 31 F. Supp. 2d 604 (N.D. Ill. 1998) ("Petit II"). After a protracted period of consolidated discovery with other cases involving alleged discrimination

---

[1] For brevity in writing, except where a specific distinction is necessary, the racial, national origin, and gender discrimination in this case will be referred to as "racial" discrimination. The test score adjustments based on race will be referred to as "racial standardization" and the out-of-rank-order promotions will be referred to as "racial promotions." Jointly, racial standardization and racial promotions will be referred to as "racial preferences."

210

during the same time period, the case was finally reviewed for summary judgment in 1998. In Petit II, it was held that undisputed facts showed that 244 of the named plaintiffs either would not have been promoted at all or not promoted earlier even if there had been no racial preferences. Of the remaining 82 plaintiffs, undisputed facts showed that only 42 could have been affected by the racial promotions. See Petit II, 31 F. Supp. 2d at 609. Thus, the 244 plaintiffs had no viable claim for lost pay, but were permitted to remain in the case because they might have a claim for nominal damages or damages for emotional injury. See id. at 612. Filing of the final pretrial order was delayed by some additional discovery, additional motions including motions seeking the application of collateral estoppel, and a stay while the case on which estoppel was based was pending on appeal. Also, Erwin v. City of Chicago, involving promotions to lieutenant, was reassigned to this bench on the representation that it could be tried with the Petit case. After the appellate ruling in the case that was the basis for estoppel, see Majeske v. City of Chicago, 218 F.2d 816 (7th Cir. 2000), cert. denied, 531 U.S. 1079 (2001), more motions were filed, including defendant's motion for summary judgment dismissing the remaining claims of the 244 plaintiffs on the ground that a Supreme Court case issued subsequent to Petit II established that these plaintiffs did not have a cognizable claim for nominal or emotional damages. See Texas v. Lesage, 528 U.S. 18 (1999). That motion was granted and the remaining aspects of these

plaintiffs' claims were dismissed. See Petit v. City of Chicago, 2001 WL 629306 *5-6 (N.D. Ill. May 25, 2001) ("Petit V").

A July 11, 2001 date for submission of the final pretrial order was set, but the parties continued to submit further motions that could affect the contents of the final pretrial order. The pretrial order date was reset to August 29, 2001 and a briefing schedule was set that allowed for ruling on a further collateral estoppel motion and other motions before the due date. See Minute Order dated June 13, 2001 (Docket Entry 263). These motions were ruled upon on August 9, 2001, see Petit v. City of Chicago, 2001 WL 914457 (N.D. Ill. Aug 13, 2001[2]), which still allowed for filing of the final pretrial order on August 29. Thereafter, the parties filed further motions, including a motion to delay filing of the final pretrial order while they attempted to settle the Erwin case. On August 29, filing of the final pretrial order was reset to September 26, 2001. Also filed on August 29, 2001, was plaintiffs' motion to reinstate dismissed female plaintiffs. A briefing schedule was set for that motion. The parties settled the remaining aspects of the Erwin case, but filing of the final pretrial order for Petit was reset to October 9, 2001. The motion to reinstate female plaintiffs is now fully briefed and before the court.

As required by local rule, with its 1998 summary judgment motion, defendant provided a statement of uncontested facts. See Loc. Gen. R. 12(M) (1998) (now renumbered as L.R. 56.1(a)). To

---

[2]Westlaw uses the date of entry on the docket.

the extent plaintiffs contended there was a genuine dispute as to any fact asserted by defendant, they were required to state their disagreement with citations to supporting materials establishing a genuine dispute. See Loc. Gen. R. 12(N) (1998) (now renumbered as L.R. 56.1(b)). "All material facts set forth in defendant's 12(M) Statement [were] deemed to be admitted unless properly controverted by plaintiffs. N.D. Ill. Loc. R. 12(N)(3)(b); Karazanos v. Madison Two Associates, 147 F.3d 624, 626 (7th Cir. 1998); Dade v. Sherwin-Williams Co., 128 F.3d 1135, 1139-40 (7th Cir. 1997)." Petit II, 31 F. Supp. 2d at 608.

At the time the summary judgment motion was briefed, plaintiffs did not dispute that the total number of sergeant promotions was 458, see Pls. Response to City's 12(M) Statement ¶ 67,[3] or that this included 402 promotions based on the racially standardized scores and 56 racial promotions, see Petit II, 31 F. Supp. 2d at 610. At the time of summary judgment, plaintiffs

---

[3]In their present motion, plaintiffs make reference to prior filings without attaching copies of the cited documents nor even clearly identifying the cited documents. As of this writing, the Petit case contains 269 docket entries. This does not include Petit documents that are filed in one of the connected cases. Many of the documents are thick and therefore are stored loosely in boxes, not in numerical order in the Clerk's Office's standard folders. To the extent the cited documents are in cases pending on appeal, the document itself may not even be in the district court. Plaintiffs have repeatedly cited documents, including those filed in cases that were not pending in front of this bench, without attaching copies of the cited documents. Plaintiffs should not expect that this bench will be continually searching for cited documents and are admonished to henceforth provide with a motion or brief any cited document originally filed with a different motion. As to the present motion, defendant has attached to its answer most, but not all, of the pertinent documents.

failed to raise any genuine factual dispute that 244 of them would not have been promoted any sooner or at all if not for the racial preferences. See Pls. Response to City's 12(M) Statement ¶ 68-70; Petit II, 31 F. Supp. 2d at 609. In their present motion, brought almost three years after the original ruling and without any change of law or apparently any pertinent new discovery, plaintiffs contend the facts are different. Plaintiffs previously had an adequate opportunity to show that more of them would have been promoted or promoted sooner if not for defendant's allegedly wrongful conduct. Absent entry of judgment, which has not occurred in this case, there is no absolute time limit for seeking reconsideration. Anderson v. Cornejo, 199 F.R.D. 228, 252 (N.D. Ill. 2000); Ruehman v. Village of Palos Park, 842 F. Supp. 1043, 1062 (N.D. Ill. 1993), aff'd, 34 F.3d 525 (7th Cir. 1994); Pivot Point International, Inc. v. Charlene Products, Inc., 816 F. Supp. 1286, 1288 (N.D. Ill. 1993); United States ex rel. A. Hollow Metal Warehouse, Inc. v. United States Fidelity & Guaranty Co., 700 F. Supp. 410, 411-12 (N.D. Ill. 1988). However, it is good practice to seek reconsideration within a short time after the initial decision and it is within the court's discretion as to whether to address dilatory motions to reconsider interlocutory orders. See Anderson, 199 F.R.D. at 253; Simmons v. City of Chicago, 1997 WL 30999 *2 (N.D. Ill. Jan. 23, 1997); United Air Lines, Inc. v. ALG, Inc., 916 F. Supp. 793, 795 (N.D. Ill. 1996); Ruehman, 842 F. Supp. at 1065; Bankard v. First Carolina Communications, Inc.,

1992 WL 3694 *6 n.3 (N.D. Ill. Jan. 6, 1992); Turner v. Chicago Housing Authority, 771 F. Supp. 924, 926 & n.2 (N.D. Ill. 1991), vacated & remanded on other grounds, 969 F.2d 461 (7th Cir. 1992). Here, no good reason is presented for waiting three years and just before the final pretrial order is due to seek reconsideration. As to one of their arguments, plaintiffs contend that the motion only became necessary after the court declined to trifurcate the trial to separately consider the operational necessity defense. But whether particular plaintiffs may have suffered a loss of pay does not turn on the validity of defendant's operational necessity defense and, even if it did, waiting for a later phase of a trial would be an even less appropriate time to raise the present reconsideration issues. Moreover, although plaintiffs seek reconsideration of a summary judgment ruling, they make no attempt to support their reconsideration motion with any type of Rule 56.1 motion nor do they include adequate references to the record directly in their reconsideration motion or briefs. Because the motion is dilatory and inadequately supported, this court declines to exercise its discretion to reconsider the prior ruling.

But even if the reconsideration motion were to be considered on its merits, it would be denied. Plaintiffs now contend that there were 435 promotions based on the racially standardized scores plus 16 females and 12 Hispanics who received racial promotions, which totals 463 (not 458) and which is different from the 402/56 split that was undisputed on summary

judgment. Plaintiffs do not provide any form of Rule 56.1 Statement and do not provide any support for their claimed 435/28 split.⁴ But even accepting plaintiffs' representations as to the promotions and rankings as true, they do not point to an equal protection violation. Plaintiffs contend that the 16 females allegedly given racial promotions should have been chosen based on their rank order among females and, if they had, two of the dismissed female plaintiffs would have received those promotions. For purposes of this contention, plaintiffs do not dispute that defendant was entitled to provide preferences to women; they only dispute which women should have been given the preferences. While plaintiffs contend this selection should have been performed in rank order, they point to no unconstitutional criteria being used instead. The Constitution does not mandate selection by rank order; it only prohibits using certain invidious criteria. Plaintiffs do not point to any unconstitutional criteria being employed in determining who the 16 preferenced women would be. Therefore, the two female plaintiffs cannot successfully claim that they should have been among the 16 women receiving a racial promotion.

Plaintiffs' other contention is that no female plaintiffs should have been dismissed because, to the extent the City succeeds in proving its operational needs defense regarding

---

⁴The document apparently cited by plaintiffs (Docket Entry 258, Exh. 5(B)) is a list of adjusted scores. It does not establish how many sergeants were promoted nor whether they were promoted based on racial standardization or racial promotion.

female sergeants, women continued to be severely underrepresented in the sergeant ranks and therefore all the female plaintiffs should have been promoted in order to satisfy the CPD's operational needs. First, plaintiffs point to no evidence showing how many female sergeants were needed to satisfy the CPD's alleged operational needs. But even assuming the City will succeed in showing such a need was justified and that there were not enough women sergeants to fully satisfy the CPD's operational needs, additional female plaintiffs have not shown that their claims should not have been dismissed. Even if it had an additional need for female sergeants, the City was not required to promote every female who applied. It could still insist on certain minimum qualifications and not choose to select every female who applied. The dismissed female plaintiffs have not pointed to evidence that they did well enough on the examination to meet minimum selection criteria. But even assuming some or all of the dismissed female plaintiffs satisfied the minimum selection criteria, these plaintiffs do not have a viable claim. While the CPD'S operational needs may or may not be a viable justification for affirmative action, it is clear that there is no constitutional mandate that the CPD satisfy its operational needs for females and minorities. Thus, even if the CPD did not satisfy its operational needs for female sergeants, it did not violate the Constitution to fail to hire more women sergeants. The female plaintiffs cannot have a viable constitutional claim

that they should have been promoted to satisfy the CPD's operational needs.

Because plaintiffs' motion comes too late and is not adequately supported by citation to supporting evidence, reconsideration will not be granted. Alternatively, the reconsideration motion is considered on its merits and no reason is found to modify the court's prior rulings dismissing the claims of certain female plaintiffs.

IT IS THEREFORE ORDERED that plaintiffs' motion to reinstate dismissed female plaintiffs [265-1] is denied.

ENTER:

William T. Hart
UNITED STATES DISTRICT JUDGE

DATED: SEPTEMBER 26, 2001