# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 90 C 4984 | DATE | JANUARY 2, 2002 |
| CASE TITLE | ROBERT PETIT, et al. v. CITY OF CHICAGO, etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiffs' motions in limine are granted in part, denied in part and reserved in part. Defendant's motions in limine [281 to 288] are granted in part, denied in part and reserved in part. See Memorandum Opinion for details.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | 2 | |
| ✓ | Notices mailed by judge's staff. | | number of notices | |
| ✓ | Notified counsel by telephone. | | JAN 3 2002 | |
| | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | 313 |
| | Copy to judge/magistrate judge. | | JAN. 2, 2002 | |
| CW | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | MQM mailing initials | |



DOCKETED

JAN - 3 2002

| | |
|---|---|
| ROBERT PETIT, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>CITY OF CHICAGO, a municipal )<br>corporation, )<br><br>Defendant. ) | No. 90 C 4984 |

## MEMORANDUM OPINION AND ORDER

This case involves promotions within the Chicago Police
Department ("CPD") and allegations that White police officers
were discriminated against in the process. The promotions at
issue are promotions to sergeant based on a 1985-88 sergeants
promotional examination (the "1988 Examination") that produced a
1988 eligibility list used between December 1988 and September
1991. The scores of the 1988 Examination were adjusted for race
and there were also out-of-rank-order promotions of Hispanics and
women.[1]  See generally Petit v. City of Chicago, 31 F. Supp. 2d
604 (N.D. Ill. 1998) ("Petit II"). After a protracted period of
consolidated discovery with other cases alleging discrimination

---

[1]For brevity in writing, except where a specific
distinction is necessary, the racial, national origin, and gender
preferences involved in this case will be referred to as
"racial." The test score adjustments will be referred to as
"racial standardization" and the out-of-rank-order promotions
will be referred to as "racial promotions." Jointly, racial
standardization and racial promotions will be referred to as
"racial preferences."

at other ranks of the CPD, the Petit case was returned to the
assigned judge for the resolution of remaining issues, including
dispositive motions and preparation of the case for trial.
Following rulings on summary judgment and related motions, 82
plaintiffs remain in this case with claims for lost wages and
related damages based on racial standardization of the 1988
Examination. Forty-two of those plaintiffs also have pending
damages claims based on the racial promotions. All other
plaintiffs and all claims for injunctive or declaratory relief
have been dismissed. See Petit II, 31 F. Supp. 2d at 609, 613,
615; Petit v. City of Chicago, 2001 WL 629306 *6 & n.11 (N.D.
Ill. May 25, 2001) ("Petit V"). Also, all defendants except the
City have previously been dismissed. See Petit v. City of
Chicago, 766 F. Supp. 607 (N.D. Ill. 1991) ("Petit I").

The City does not deny that it consciously took race into
consideration in standardizing the test scores and granting the
racial promotions. It does, however, dispute that it engaged in
intentional discrimination against White officers.[2] Assuming
discrimination is proven, the City does not dispute that it has
the initial burdens of production regarding its defense that a
compelling government interest justified its actions, though
plaintiffs retain the ultimate burden of persuading the
factfinder that the City's conduct was unconstitutional. See
Petit V, 2001 WL 629306 at *8; Petit v. City of Chicago, 1999 WL

───────────────

[2]Plaintiffs contend there is no factual dispute as to the
City engaging in intentional discrimination. That issue is
discussed below as regards one of plaintiffs' motions in limine.
See § I(A), infra.

66539 *4 (N.D. Ill. Feb. 8, 1999) ("<u>Petit III</u>").  The City
contends the racial preferences were justified by three
compelling interests.  First, it contends that it had a
compelling interest in remedying the effects of its prior
discrimination in CPD hiring and promotions (the "Remedy
Defense").  Second, it contends that it had a compelling interest
in avoiding a violation of federal discrimination laws (the
"Title VII Defense").  <u>See</u> Title VII of the Civil Rights Act of
1964, 42 U.S.C. § 2000e <u>et seq.</u> ("Title VII").  Third, the City
contends that it had a compelling interest in maintaining an
integrated workforce at the sergeant rank in order to maintain
the CPD's operational effectiveness (the "Operational Needs
Defense").

On November 21, 2001, the parties presented their final
pretrial order.  Because liability and damages has been
bifurcated, the pretrial order and the impending trial is limited
to the issue of liability.  Each side filed a substantial number
of motions in limine and there are numerous objections to
exhibits and witnesses.  The jury trial of this case is set to
begin on January 14, 2002.  Today's ruling resolves the majority
of the motions in limine.  Any motions in limine, objections to
exhibits, and objections to witnesses that are not resolved by
today's ruling will be addressed at the upcoming pretrial
conference that is presently set for January 9, 2002.[3]  At the
pretrial conference, the parties should also be prepared to

---

[3]It is possible that some issues will be reserved for
resolution at trial.

address scheduling issues regarding the trial, including the
expected length of the trial in light of the rulings on the
motions in limine and objections.

## I. PLAINTIFFS' MOTIONS IN LIMINE[4]

### A. State of Mind Defense [M(3)]

The City does not dispute that it used racial
classifications when it standardized the 1988 Examination scores.
See Petit II, 31 F. Supp. 2d at 610. There is also no dispute
that the racial promotions were only made available to Hispanics
and women. Thus, each of the challenged practices involved
facial classifications, that is, "on its face, it explicitly
distinguishes between people on the basis of some protected
category." Barnhill v. City of Chicago, Police Department, 142
F. Supp. 2d 948, 964 (N.D. Ill. 2001). See also Hayden v. County
of Nassau, 180 F.3d 42, 48 (2d Cir. 1999).

The City nevertheless contends that it did not engage in
intentional discrimination in violation of the Equal Protection
clause because it acted with the intent to avoid Title VII
violations, remedy past discrimination, and improve operational
effectiveness, not with an invidious animus toward non-minority

---

[4]Plaintiffs' motions in limine were included as part of
the final pretrial order. The bracketed number contained in the
headings for this section of the opinion refer to the tab of § M
of the pretrial order under which each motion in limine was
filed.

officers.[5]  In its Trial Brief, at 19, the City cites cases in
which governmental entities modified testing or selection
procedures in order to avoid engaging in discriminatory
selection.  In those cases, it was held that conscious decisions
to avoid racial discrimination against minorities did not
necessarily constitute invidious discrimination against non-
minorities.  The City ignores, however, that all of those cases
involved <u>facially neutral</u> policies and the question of whether
the policies were nevertheless motivated by an invidious animus
toward non-minorities.  See <u>Hayden</u>, 180 F.3d at 48-52; <u>Raso v.
Lago</u>, 135 F.3d 11, 16-17 (1st Cir.), <u>cert. denied</u>, 525 U.S. 811
(1998); <u>Barnhill</u>, 142 F. Supp. 2d at 964-67; <u>Barbera v. Metro-
Dade County Fire Department</u>, 117 F. Supp. 2d 1331, 1336-40 (S.D.
Fla. 2000); <u>Berkley v. United States</u>, 48 Fed. Cl. 361, 368-76
(2000).  Those cases are distinguishable from the present case
where the use of facial classifications invokes strict scrutiny
and requires that the CPD have a compelling interest that
justifies a narrowly tailored use of the facial classifications.
"Benign intentions do not immunize government action, but they
substantially narrow the inquiry.  The primary test is that any
government action--regardless of benign intent--is suspect if it
has been taken on the basis of a 'racial classification;' in such
cases, the classification must be justified by a compelling state

_____

        [5]Plaintiffs' motion refers to this issue as a "state of
mind" defense.  However, the existence of intentional
discrimination is part of plaintiffs' initial case, not a
defense.  See <u>Hayden</u>, 180 F.3d at 48; <u>Barnhill</u>, 148 F. Supp. 2d
at 964.

interest and narrow tailoring." Raso, 135 F.3d at 16. See also
Hayden, 180 F.3d at 49; Berkeley, 48 Fed. Cl. at 368.

Contrary to the City's contention, whether it engaged in
invidious discrimination is not at issue in this case. It admits
engaging in facial, racial classifications. Therefore, its
conduct is subject to strict scrutiny and it must meet its
production burden of showing a strong basis in the evidence of a
compelling interest. It is the City's defenses that will be at
issue at trial. The City will not be permitted to argue that it
did not engage in invidious discrimination. The City will also
be precluded from presenting evidence solely for the purpose of
showing that it did not engage in invidious discrimination.[6]

## B. EEOC Guidelines and Testimony About the Law [M(2)]

No witness, expert or otherwise, will be permitted to
testify as to the law. It is the court that will instruct the
jury as to the law. However, one of the City's claimed
compelling interests is its attempt to avoid violating Title VII,
which is a possible compelling interest or a possible compelling
interest when considered in combination with other interests.
See Petit II, 31 F. Supp. 2d at 613-14. At this point, no basis
exists for foreclosing the possibility of such a compelling

---

[6]Plaintiffs do not specifically identify the evidence
that they seek to exclude. Evidence that the City considered
pertinent to its contention that it did not engage in invidious
discrimination may still be admissible for other purposes, e.g.,
as evidence establishing one of its claimed compelling interests.

interest being proven at trial[7] and defendant will be permitted
to attempt to prove such a defense at trial.  In presenting that
defense, the City will have to show that there is a strong basis
in the evidence to support it and will also have to show that
such a purpose actually motivated the City's decision to
implement the racial preferences.  See Shaw v. Hunt, 517 U.S.
899, 909-10 & n.4 (1996); Rothe Development Corp. v. United
States Department of Defense, 262 F.3d 1306, 1326-27 & n.19 (Fed.
Cir. 2001); Gratz v. Bollinger, 135 F. Supp. 2d 790, 794 (E.D.
Mich. 2001).  To the extent necessary to show the actual
motivation of the City regarding its attempt to avoid Title VII
violations, witnesses will be permitted to testify regarding
their intention to avoid Title VII violations.  The parties,
however, must be careful in asking such questions and attempt to
limit the testimony to this specific purpose.  If any confusion
about the law arises from such testimony, an appropriate limiting
instruction will be given if requested by a party.

     Plaintiff also objects to some of defendant's specific
exhibits.  Defendant Exhibit 50 is the text of 42 U.S.C.A.
§ 2000e-2, including historical and statutory notes, cross

---

[7]No motion for summary judgment was filed challenging
this defense on a factual basis and plaintiffs cite no case
subsequent to Petit II that has foreclosed the possibility as a
matter of law.  As the Seventh Circuit has recently noted,
though, the law is unsettled as to whether any compelling
interest other than remedying discrimination can justify "reverse
discrimination."  See Builders Association of Greater Chicago v.
County of Cook, 256 F.3d 642, 644 (7th Cir. 2001).  Presently
existing precedent in the Seventh Circuit, however, does support
that there can be other compelling interests.  See id. (citing
Wittmer v. Peters, 87 F.3d 916 (7th Cir. 1996), cert. denied, 519
U.S. 1111 (1997)); Petit II, 31 F. Supp. 2d at 613-14.

references to other West publications and regulations, and a list
of law review commentaries.  The objection to Exhibit 50 is
sustained.  The additional notes as well as many of the
subsections of the statute are not relevant to the claims in this
case.  To the extent the text of the statute is pertinent and
necessary, it will be quoted in the jury instructions in an
edited form.

Defendant Exhibit 51 is the text of 29 C.F.R., Part 1607
(1997).[8]  This Part is entitled "Uniform Guidelines on Employee
Selection Procedures (1978)."  It includes standards for
validating employment tests and selection procedures.  Providing
the entire text of this regulation may confuse the jury.  To the
extent defendant believes some or all of the contents of this
regulation are necessary to the jury's determination in this
case, it should propose a summary that must be approved by the
court, after consideration of any objections by plaintiffs.
Presently, the objection to Exhibit 51 is sustained.[9]

### C. After-Acquired Evidence [M(4)]

Plaintiffs object that, in seeking to justify the racial
preferences, the City is relying on matters not known to it at

---

[8]It also includes portions of the prior section and
following section that are included on the first and last pages
of the version that defendant photocopied or printed.

[9]Plaintiffs' motion also refers to Defendant Exhibits 52
to 55, though it is not clear if that is intended as an objection
to those exhibits.  The final pretrial order indicates Exhibit 52
is a joint exhibit.  In any event, any objections as to these
exhibits will be considered at the pretrial conference.

the time it made its decision to use racial preferences.[10]
Plaintiffs do not identify the evidence to which they are
objecting. The City does not dispute that it cannot rely on
reasons that did not actually motivate it at the time it decided
to implement the racial preferences. However, the City does
intend to present expert testimony that was prepared for the
litigation as well as evidence of specific instances of past
discrimination that were not necessarily specifically known by
the persons who decided to implement the racial preferences.

At the time a government entity implements preferential
treatment for a racial group, it must have a strong evidentiary
basis for doing so. <u>Shaw</u>, 517 U.S. at 909-10; <u>Builders
Association of Greater Chicago v. County of Cook</u>, 256 F.3d 642,
645 (7th Cir. 2001). The racial preferences at issue in the
present case have not been applied since 1991. As to each
particular compelling interest, the City must show that, during
the pertinent time period,[11] it had a strong basis for finding
the particular compelling interest to be present. It cannot rely

---

[10]Plaintiffs refer to this as "after-acquired evidence."
That term, however, generally refers to a different aspect of
employment discrimination law. <u>See generally</u> <u>McKennon v.
Nashville Banner Publishing Co.</u>, 513 U.S. 352 (1995). In the
case law, the type of evidence to which plaintiff objects is
often referred to as "post-enactment evidence." <u>See, e.g.</u>,
<u>Rothe</u>, 262 F.3d at 1324-28. In today's opinion, it will be
referred to as "post-implementation evidence" since that term
more accurately refers to the pertinent time period and because
this case involves executive conduct, not legislative enactment.

[11]To the extent there is evidence that would support that
a strong basis came into existence during the time the racial
preferences were being implemented, the jury interrogatories must
include time-specific questions. For example, the existence of a
strong basis in 1990 would not justify 1988 promotions, but could
justify 1990 and 1991 promotions.

on a post-1991 factual basis as constituting the necessary strong basis in the evidence. Rothe Development, 262 F.3d at 1324-28; Associated Utility Contractors of Md., Inc. v. Mayor of Baltimore, 83 F. Supp. 2d 613, 620-21 & n.6 (D. Md. 2000); West Tennessee Chapter of Associated Builders & Contractors, Inc. v. Board of Education of Memphis City Schools, 64 F. Supp. 2d 714 (W.D. Tenn. 1999), cert. for interlocutory appeal, 138 F. Supp. 2d 1015 (W.D. Tenn. 2000). See also Builders Association of Greater Chicago v. City of Chicago, 2001 WL 1002480 *5-6 (N.D. Ill. Aug. 30, 2001).

The City may not rely on evidence of past discrimination that was not known to the City during the time it implemented and applied the racial preferences. However, not all post-1991 expert analysis is necessarily ruled out. First, this ruling applies only to the showing of a strong basis in the evidence that a compelling interest existed. The question of whether the implemented preferences were narrowly tailored is a different issue that will not be limited to contemporary analysis or contemporaneously known facts. See Rothe, 262 F.3d at 1325, 1328; West Tennessee, 138 F. Supp. 2d at 1020; Utility Contractors of Md., 83 F. Supp. 2d at 620 n.5. See also Petit V, 2001 WL 629306 at *8.[12] Second, neither side is

---

[12]Petit V cited cases allowing broader consideration of post-implementation evidence, but Petit V itself only considered post-implementation statistical evidence as it related to narrow tailoring. Today's opinion relies on cases that take into consideration the implications of Shaw v. Hunt and expressly limit the purposes for which post-implementation evidence may be used.

necessarily precluded from presenting post-implementation
analysis of whether the contemporary determinations and facts
constituted strong evidence. Presumably, plaintiffs will
attempt to discredit contemporaneous evidence of a strong basis
and the City may have post-implementation evidence that seeks to
rebut an attempt to discredit. However, in order to attempt to
resolve such issues in advance of the testimony, each side must
provide the other side with at least three court days' notice of
the intent to use post-implementation evidence for such
purposes, which notice shall proffer a sufficient identification
and summary of the proposed evidence.

### D. Opinion Testimony Regarding True Scores [M(1)]

Plaintiffs raise two objections to the City's
presentation of testimony regarding the standard error of
measurement for the 1988 Examination, including testimony to the
effect that the large "bunches" of scores were too close to
represent a meaningful difference in qualifications. Plaintiffs
object that (a) the person who will provide such testimony,
former Deputy Commissioner of the Department of Personnel Robert
Joyce, has not been identified as an expert witness and (b) the
"true score" or "close score" theory is not a proper defense.

Because Joyce is a City employee who does not regularly
testify as an expert, not a person specially retained to be an
expert witness, the report disclosure provisions of Fed. R. Civ.
P. 26(a)(2)(B) cannot apply to him. Heidelberger Druckmaschinen
AG v. Ohio Electronic Engravers, Inc., 2000 WL 631382 *6 (N.D.
Ill. May 12, 2000). However, if he is to provide expert opinion

testimony, he still must be disclosed as an expert witness. Fed. R. Civ. P. 26(a)(2)(A); <u>Heidelberger</u>, 2000 WL 631382 at *6. The City contends Joyce will not testify as an expert. Instead, he will testify as to first-hand knowledge of the process by which the City determined the 1988 Examination would have an adverse impact and its decision to instead apply racial standardization. That will include testimony as to standard error of measurement analysis performed by the City. The City contends this will not be expert testimony as to standard errors of measurement. Since the City's actual motivation and the facts known to it at the time are both relevant, Joyce's understanding as to standard errors of measurement would be relevant. However, since Joyce will not be qualified as an expert, he cannot provide opinion testimony as to the actual standard error of measurement for the 1988 Examination; he can only testify as to the City's contemporaneous perception of that measure. The City must be careful to limit its use of this evidence to that extent. With that limit in mind, the failure to disclose Joyce as an expert does not preclude his testimony. Plaintiffs also complain that this testimony was not disclosed in response to various discovery requests, none of which are specifically identified in this motion. However, Joyce's testimony to this effect was disclosed in the affidavit he provided for defendant's summary judgment motion and plaintiffs' deposition of Joyce occurred after they were provided the affidavit. Plaintiffs cannot properly contend they were surprised.

Plaintiffs also contend that the standard error of measurement cannot form the basis of a proper defense. The City, however, is not contending that it can simply ignore test results within a standard error of measurement and favor any minority who scores lower than a White, but within the standard error of measurement. It instead contends that a large number of scores falling within a standard error of measurement indicates that the scores are not likely to be a good means of distinguishing successful and unsuccessful candidates. That would be support for concluding that the un-standardized 1988 Examination results were not job-related. It would also be support for the contention that the City attempted to narrowly tailor the impact of racial standardization in that it did not move minority candidates up beyond a standard error of measurement.

This motion in limine will be denied except that Joyce's testimony is limited to being used as nonexpert testimony concerning actual events and motivations.

### E. Multiple Experts [M(5)]

Plaintiffs object that the City is violating Local Rule by designating three experts for its Operational Needs Defense. Samuel Walker and Thomas Potter, however, will provide testimony on different aspects of the defense. Their testimony is not duplicative and therefore will be permitted to the extent it is otherwise admissible. See § I(F), infra. Norman Stamper is designated as "may call." The City concedes that his testimony is duplicative of Potter. However, Stamper is a may-call witness

because he will only be called if Potter is unavailable.  This
motion of plaintiffs will be denied.

### F. Operational Needs Experts [M(6)]

The court provisionally finds that Walker, Potter, and
Stamper qualify to testify as experts.  However, the opinions
contained in their reports do not directly address the issue of
whether, as to its operational needs, the City had a strong basis
in the evidence at the time it was implementing and applying the
racial preferences.  Clearly, testimony concerning a 1996 survey
is not evidence that was before the City during the pertinent
time period and is not directly relevant to there being a strong
basis in the evidence during the pertinent time period.  Other
testimony directly concerning the pertinent time period will be
necessary in order to establish that a strong basis in the
evidence existed.  If the City otherwise establishes a strong
basis in the evidence and plaintiffs present evidence attacking
the merits of that evidence, then the expert testimony may be
appropriate rebuttal evidence.  At this point, though, it is
found that the testimony of all three experts will be excluded
from the City's initial case.  At the upcoming pretrial
conference, the City will be permitted to address reconsideration
of this ruling, but for now the ruling is that these experts will
not be permitted to testify.  After plaintiffs have presented
their case, the City may raise the issue (in light of the
evidence presented at trial) of whether these experts should be
permitted to provide rebuttal testimony.

## G. Siskin Testimony [M(7) & (8)]

Plaintiffs move to bar the testimony of defendant's statistical expert, Bernard Siskin. They raise two grounds: (a) his qualifications as an expert and (b) the destruction of evidence. It is provisionally found that Siskin qualifies to testify as an expert. The objections raised by plaintiffs generally go to the weight of his testimony, not its admission. Also, it is not found that the City improperly withheld evidence pertinent to Siskin's opinions.

Siskin's testimony will go to the issue of narrow tailoring and is admissible for that purpose. However, since his analysis was not performed until 1997, it could not have been considered by the City when determining in the 1985-91 time period that a strong basis in the evidence existed for a compelling interest in remedying the effects of discrimination. At this time, it is found that Siskin's testimony may not be used to prove there was a strong basis in the evidence, but, in rebuttal, it may be admissible regarding that issue. In the upcoming pretrial conference, the City may seek reconsideration of this issue. As to rebuttal use, no final ruling on that issue will be made until plaintiffs have presented their case.[13]

## H. Failure to Disclose in Discovery [M(9)]

Plaintiffs move to bar various documents, witnesses, and contentions because not adequately disclosed during discovery.

---

[13]The City will be granted leave to file an amended statement of Siskin's qualifications, limited to correcting the identified error in the statement.

This motion will be addressed at the upcoming pretrial conference.

## II. DEFENDANT'S MOTIONS IN LIMINE[14]

### A. Deem Facts to be Admitted [281]

Where a motion for summary judgment has been ruled upon without resolving the case in its entirety, the court may, if practicable, determine that certain facts are uncontested for trial. Fed. R. Civ. P. 56(d); United States ex rel. Ramm Plumbing Co. v. Wil-Freds Construction, Inc., 1997 WL 391456 *5 (N.D. Ill. July 7, 1997); Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice & Procedure § 2727 (1998). The City contends that certain facts that were not disputed in response to summary judgment should be deemed admitted for purposes of trial. In response to the present motion, plaintiffs do not dispute that the asserted facts are true, only that they are incomplete. Contrary to plaintiffs' contention, though, the claimed incompleteness does not make the facts misleading. Also, plaintiffs will be free to provide evidence of additional facts at trial. Further, between now and the time of trial, the parties are not precluded from further attempting to agree on stipulated facts. The City shall prepare an exhibit

---

[14]The bracketed number contained in the headings for this section of the opinion refer to the docket number of the filed motion.

(the "Uncontested Facts Exhibit"[15]) that instructs the jury that "The following facts are deemed uncontested" and which includes the language of ¶¶ 124, 127-29, 131, 155, and 162-64 of the City's Statement of Contested Facts (Schedule B of the final pretrial order).

It has previously been held that plaintiffs are bound by certain findings made in Majeske v. City of Chicago, No. 89 C 7262 (N.D. Ill.). See Petit III, 1999 WL 66539 at *5, reconsideration denied, 1999 WL 261706 (N.D. Ill. April 15, 1999) ("Petit IV"). The parties have not been able to agree to a stipulation that incorporates the collateral estoppel holding of Petit III. Paragraphs 9 through 13 of the City's Statement of Contested Facts fairly states the facts for which plaintiffs are bound. The language of these paragraphs shall also be incorporated in the Uncontested Facts Exhibit, except that ¶ 13 shall be changed to: "CPD discrimination against African-Americans and Hispanics during the decades prior to 1989 was significant."

The City also moves to preclude plaintiffs from presenting evidence to prove certain facts asserted in plaintiffs' proposed facts (Final Pretrial Order Sched. B), contending such facts are inconsistent with prior estoppel

---

[15]This label is being used in today's opinion. The City is not hereby being ordered to include this specific title on the exhibit itself. For the sake of consistency with language likely to be used in the jury instructions, the City is directed to make the following general language changes in the Uncontested Facts Exhibit: (a) use "African-American" instead of black; and (b) capitalize "White" and "Hispanic."

rulings in this case. As previously held, to the extent relevant to a contemporaneous strong basis in the evidence or narrow tailoring, plaintiffs are not precluded from presenting evidence as to the extent of pre-1989 discrimination as long as they do not attempt to show that it was less than "significant." See Petit IV, 1999 WL 261706 at *2; Petit III, 1999 WL 66539 at *5. The parties' inability to reach agreement as to a stipulation regarding significant past discrimination is no basis for changing that ruling. Plaintiffs are precluded from arguing or attempting to prove that (a) there was no intentional discrimination in hiring African-American or Hispanic officers during the 1970's and 1980's and (b) the CPD's physical/medical hiring requirements were not applied in an intentionally discriminatory manner. As to the latter, though, plaintiffs are not precluded from presenting evidence that the discriminatory application of the physical/medical hiring requirements ended in the mid-1970's or later. See Petit v. City of Chicago, 2001 WL 914457 *10 (N.D. Ill. Aug. 13, 2001) ("Petit VI"). Plaintiffs are also precluded from presenting evidence that, in certain court cases,[16] findings or holdings were made that intentional discrimination did not exist at the CPD.[17] The City's objection

---

[16]In their proposed facts (¶¶ 63-66), plaintiffs refer to United States v. City of Chicago, 411 F. Supp. 239 (N.D. Ill. 1976), and United States v. City of Chicago, 549 F.2d 415 (7th Cir. 1977).

[17]To the extent the City presents witnesses who testify the City was attempting to comply with court orders, plaintiffs are not necessarily precluded from questioning such witnesses as to their knowledge of the pertinent orders.

to Plaintiffs' Exhibit 52 (which quotes Seventh Circuit opinions) is sustained. To the extent relevant to remedying past discrimination or narrow tailoring, plaintiffs are not precluded from presenting evidence as to the hiring rates of African-Americans and Hispanics.

The City also raises objections regarding plaintiffs' purported delay in providing their proposed jury instructions. That aspect of the motion is moot in light of <u>Petit v. City of Chicago</u>, 2001 WL 1518549 (N.D. Ill. Nov. 29, 2001) ("<u>Petit VIII</u>").

## B. Testimony of Plaintiffs Who Were Not Deposed [282]

Plaintiffs list as may-call witnesses: "Plaintiffs in this case and the other consolidated cases." No specific plaintiff is named as a witness. The City contends that plaintiffs' wrongful conduct during discovery deprived it of the ability to receive full interrogatory answers from all plaintiffs and also limited the City to deposing 15 of the plaintiffs.[18] Plaintiffs deny the misconduct and point out that the court limited the number of plaintiffs that defendant was permitted to depose.

By January 8, 2002, plaintiffs shall provide the City with a list specifically identifying any plaintiff who may testify, with a brief summary as to the subject of the plaintiff's testimony. This list may not exceed 12 plaintiffs. To the extent the City objects to the use of any of these

---

[18]There were 342 plaintiffs in this case, of which 82 still have pending claims.

witnesses, it may present such objections at the upcoming
pretrial conference. Also, to the extent the testimony of
multiple plaintiffs would be cumulative, the court will limit the
number of plaintiffs who may testify. See Fed. R. Evid. 403.

### C. Judicial Notice [283]

The City requests that the court take judicial notice of
(a) the history of CPD hiring and promotion litigation; (b) the
"outcome" of racial discrimination litigation involving the
Chicago Housing Authority ("CHA") and the Chicago Board of
Education; and (c) United States census data for 1950, 1960,
1970, 1980, 1990, and 2000. It also requests that the actual
judicial opinions be excluded from evidence.

In contemporaneous "policy letters," City officials set
forth a stated basis for implementing the racial preferences.
One of these letters makes repeated references to pending and
past litigation. The City wants to present to the jury a time-
line[19] highlighting aspects of the history of CPD litigation, the
dates of sergeants examinations, and the dates of promotions. As
was discussed above in § I(B), the City's actual motivation for
implementing the racial preferences is pertinent. City officials
will be permitted to testify that they considered pending
litigation and plaintiffs will be permitted to cross examine them
regarding their understanding of the cases. The parties must

---

[19]This is Defendant Exhibit 12, which is provided as
Exhibit C to the motion presently under consideration.
Plaintiffs also object to Exhibit D to the motion, but the City
is clear that Exhibit D is provided only for purposes of ruling
on the motion and will not be submitted to the jury.

avoid engaging in legal arguments with a witness.  Judicial
opinions will not be provided to the jury, but, if necessary to
clarify a possible material misunderstanding by the jury, the
court will give a limiting instruction regarding the law or case
holdings.  It is expected, however, that the parties will avoid
the need for such a limiting instruction.

Defendant's Exhibit 12 would be useful to the jury's
understanding and will be admitted conditional on certain
modifications being made.  The box describing the 1977 Court of
Appeals decision shall be modified to read:  "US Court of Appeals
upholds rulings that '71 patrolman list and '73 Sgt. test
violated federal statute, but also holds intentional
discrimination in violation of US Constitution had not been
proven."  None of plaintiffs' other objections are found to state
a basis for modifying Exhibit 12.  However, at the pretrial
conference, plaintiffs will be permitted to raise specific
objections to items on the time-line.  Such objections will not
be considered unless plaintiffs submit specific alternative
language.  To the extent either side believes an appropriate
limiting instruction should also be given, it is incumbent on
that party to request a proposed instruction.

The policy letters provided make no reference to CHA or
Board of Education litigation.  Therefore, it has not been shown
that such litigation was contemporaneously considered and thus
relevant to the present case.  Additionally, the City does not
cite specific rulings nor does it propose a means for informing
the jury as to judicial notice of such litigation.  Judicial

notice will not be taken of the CHA or Board of Education
litigation.

Defendant submits a chart of census data (Def. Exh. 34)
without any underlying support.  As usual, plaintiffs object the
data is unsupported and the parties apparently made no attempt to
at least agree as to what the numbers are, even if they disagree
as to their admissibility.  As was discussed in a prior opinion,
Siskin's extrapolations from census data were appropriate
considerations in narrow tailoring analysis.  See Petit V, 2001
WL 629306 at *10.  Thus, certain census data will be relevant to
support Siskin's testimony.  To the extent the parties can
stipulate or defendant provides the underlying support (i.e,
actual census reports), the census data will be admissible
evidence and judicial notice will be taken if necessary.
However, the 2000 data is not pertinent to this case and
therefore should not be included on any exhibit.

### D. Discrimination Against Women [284]

The City moves to preclude plaintiffs from presenting
evidence of or making arguments regarding CPD discrimination
against women, including any evidence or contention that the
racial preferences affected White female applicants differently
than White male applicants.  The exact contours of the City's
request is unclear since the City itself intends to present at
least some evidence regarding women.  Its Exhibit 12 (see
§ II(C), supra) refers to court actions or decisions concerning
gender discrimination and its evidence often includes breakdowns

by male and female (see, e.g., the "policy letters;" Def.
Contested Facts Stmt. ¶ 163[20]).

In response to defendant's motion, plaintiffs contend
they will show that the out-of-rank-order promotions designated
for women only helped African-American and Hispanic women and
therefore was more an act favoring racial minorities than
affirmative action for women.  Plaintiffs contend that all the
White women who received promotions designated as out-of-rank-
order promotions were women who ranked in the top 458 prior to
the racial standardization.  Thus, according to plaintiffs, all
these women would have been promoted if there had been no racial
standardization and no racial promotions.[21]  Plaintiffs do not
dispute that, once the City applied racial standardization, the
White women would not have been promoted without application of
the out-of-rank-order promotions for women.

The only remaining claims in the present case involve
racial discrimination against White officers, both male and
female.  There is no separate claim for gender discrimination
against either all women or White women in particular.
Therefore, other than as historical background to hiring and
promotions at the CPD, discrimination against women is not at
issue in this case.  Detailed evidence of past discrimination
against women will not be permitted.  As to the effects during

_____

[20]This is one of the facts deemed uncontested.  See
§ II(A), supra.

[21]Plaintiffs do not specify whether any of these women
benefitted by being promoted earlier than if there had been no
racial preferences.

the pertinent time period and the issue of narrow tailoring, the focus must be on discrimination against Whites as a whole. Still, it would be relevant to both the City's actual motivations and narrow tailoring that some of the Whites who received out-of-rank-order promotions would have been promoted even if there had been no racial preferences. Plaintiffs are not precluded from presenting evidence that all or some of the White women who received out-of-rank-order promotions would have been promoted if there had been no racial preferences. In closing arguments, though, any contention regarding that evidence must focus on how it relates to the racial discrimination at issue in the present case.

### E. Elimination of Questions from 1988 Examination [285]

It has previously been held that plaintiffs are precluded from challenging the elimination of certain questions from the final scoring. Petit II, 31 F. Supp. 2d at 608-09 & n.5. Therefore, the fact that some questions were eliminated is not relevant to any remaining issue in the case. Plaintiffs contend it is relevant to showing that scores were close because questions were eliminated. However, plaintiffs can make that point by considering the number of questions on the examination without also presenting evidence that some questions were deleted from the scoring. Plaintiffs also contend the evidence would go to the City's credibility because letters sent to candidates are inconsistent with the City's stated explanation for eliminating questions. That conclusory assertion is rejected because plaintiffs' brief does not describe the contents of the letters

-24-

and the cited exhibits have not been provided to the court for consideration of the motions in limine. See Pl. Response to City's Motions in Limine at 27 (citing Pl. Exh. 15-17). The City's motion will be granted in full.

### F. Dr. Muenster Deposition [286]

In a prior lawsuit, minority plaintiffs challenged the CPD's medical and physical requirements for employment as discriminatory against African-American and Hispanics. The City initially disputed that allegation, but eventually entered into a 1974 consent decree resolving the dispute. See United States v. City of Chicago, 385 F. Supp. 543, 546 (N.D. Ill. 1974). Less than a month before the consent decree was entered, the City deposed a cardiologist (Joseph Muenster, M.D.) who was an expert witness for the plaintiffs in that case. Dr. Muenster died in 1987, before the case sub judice was filed. The City desires to use Dr. Muenster's 1974 deposition as evidence in the present case. Plaintiffs complain that they had no opportunity to depose Dr. Muenster, he was not properly disclosed as an expert witness, and his deposition is not admissible under the Federal Rules of Evidence.

Without determining whether Dr. Muenster's deposition is otherwise admissible, it will be excluded as a needless presentation of cumulative evidence. See Fed. R. Evid. 403. It is uncontested in the present case that, prior to 1974, the City discriminated against African-Americans and Hispanics through the use of its medical and physical requirements. See § II(A), supra. Dr. Muenster's testimony is, therefore, unnecessary.

## G. Authentication of Documents and Insufficient Identification [287 & 288]

The City's motions in limine (a) for the court to find certain exhibits authentic and (b) to exclude witnesses and exhibits not sufficiently identified in the pretrial materials will be addressed at the upcoming pretrial conference.

## III. STIPULATIONS OF FACT

Regardless of whether both sides are to blame or primarily one side is to blame, it is reprehensible that the parties could not stipulate to a single fact, especially where it is obvious that they are in agreement as to certain basic facts. Between now and the time of trial, the parties are to again attempt to reach agreement as to a stipulation of facts.

IT IS THEREFORE ORDERED that:

(A) Plaintiffs' motion in limine:

(1) to find the City is barred from presenting a state of mind defense is granted in part and denied in part. The City is precluded from arguing that it did not engage in invidious discrimination and may not present any evidence solely for that purpose.

(2) to bar City's witnesses from testifying about the law and to bar exhibits of EEOC Guidelines is granted in part and denied in part. Objections to Defendant Exhibits 50 and 51 are sustained.

(3) to bar after-acquired evidence is granted in part and denied in part. As to there being a strong basis in the evidence

that a compelling interest existed, post-1991 evidence as to that issue will not be admitted except as evidence that a strong basis in the evidence existed between 1985 and 1991. Any use of post-1991 strong basis evidence must be preceded by three court days' notice to the opposing side. Post-1991 evidence as to narrow tailoring is not barred from being presented.

(4) to bar City's witnesses from giving opinion testimony about the true score theory is granted in part and denied in part. Joyce's testimony as to the standard error of measurement of the 1988 Examination is limited to testimony concerning actual events and motivations.

(5) to bar the City from presenting more than one expert per subject is denied.

(6) to bar opinion reports on "operational necessity" is granted in part and reserved in part. Samuel Walker, Thomas Potter, and Norman Stamper will not be permitted to testify in the City's case-in-chief. Ruling is reserved as to whether any of them may testify as rebuttal witnesses.

(7) to bar City's Siskin report due to City's destruction of evidence and withholding evidence is denied.

(8) to bar City's Siskin Report under Daubert framework is granted in part, denied in part, and reserved in part. Siskin's testimony in the City's case-in-chief is limited to the issue of narrow tailoring. Ruling is reserved as to whether he can testify in rebuttal on the issue of there being a strong basis in the evidence that the City had a compelling interest in remedying the effects of past discrimination. The City is

granted leave to file an amended statement of Siskin's qualifications.

(9) to bar documents, witnesses, and contentions not disclosed in discovery is reserved for ruling at the upcoming pretrial conference.

(B) Defendant's motion in limine:

(1) to deem certain facts admitted and to exclude opinions and findings of previous cases and other evidence offered to dispute the existence or extent of past intentional discrimination [281-1,2] is granted in part and denied in part. Defendant shall provided an Uncontested Facts Exhibit as described herein. Plaintiffs are precluded from attempting to prove that (a) there was no intentional discrimination in hiring African-American or Hispanic officers during the 1970's and 1980's and (b) prior to 1974, the CPD's physical/medical hiring requirements were not applied in an intentionally discriminatory manner. Plaintiffs are also precluded from presenting evidence that, in certain court cases, findings or holdings were made that intentional discrimination did not exist at the CPD. The City's objection to Plaintiffs Exhibit 52 is sustained.

(2) to exclude testimony from plaintiffs who were not deposed or to permit depositions prior to trial [282-1,2] is granted in part and denied in part. By noon on January 8, 2002, plaintiffs shall provide defendant with a list of possible plaintiff witnesses (not to exceed 12) and a summary of their possible testimony.

(3) for the court to take judicial notice of certain facts and to exclude judicial opinions as evidence [283-1,2] is granted in part, denied in part, and denied in part without prejudice. Judicial notice is taken of the litigation-history facts underlying Defendant Exhibit 12, modified as stated herein. Judicial opinions may not be presented as evidence in this case.

(4) to exclude evidence concerning prior discrimination against women and the effect of the challenged promotions on White women particularly [284-1] is granted in part and denied in part. Detailed evidence of past discrimination against women is excluded.

(5) to exclude evidence concerning the elimination of questions from use in the final scoring of the 1985-1988 sergeant examination [285] is granted.

(6) to permit the deposition testimony of Dr. Joseph J. Muenster to be admitted into evidence [286-1] is denied.

(7) for the court to find certain exhibits authentic [287-1] is reserved for consideration at the upcoming pretrial conference.

(8) to exclude witnesses and exhibits not sufficiently identified in the pretrial materials [288-1] is reserved for consideration at the upcoming pretrial conference.

ENTER:

William T Hart

UNITED STATES DISTRICT JUDGE

DATED: JANUARY 2, 2002