# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 90 C 4984 | **DATE** | **OCTOBER** 9 , 2003 |
| **CASE TITLE** | ROBERT PETIT, et al. v. CITY OF CHICAGO, etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant City of Chicago's bill of costs is granted in part and denied in part. The Clerk of the Court is directed to enter judgment in favor of defendant City of Chicago and against all plaintiffs, jointly and severally, except plaintiffs Fraternal Order of Police Lodge No. 7, et al. (see Opinion), in the amount of $6,522.99 representing costs incurred prior to May 25, 2001. The Clerk of the Court is further directed to enter judgment in favor of defendant City of Chicago and against plaintiffs Frank Aljinovic, et al. (see Opinion), in the amount of $14,077.36 representing costs incurred after May 25, 2001. Enforcement of these judgments are stayed until the appeal of the judgment dismissing this case becomes final.

(11) ■ [For further detail see attached Memorandum and Opinion and Order.]

| | No notices required, advised in open court. | | | | 7 number of notices | | Document Number |
|---|---|---|---|---|---|---|---|
| | No notices required. | | | | | | |
| ✓ | Notices mailed by judge's staff. | | | | OCT 10 2003 date docketed | | |
| | Notified counsel by telephone. | | | | | | |
| | Docketing to mail notices. | | | | | docketing deputy initials | 399 |
| ✓ | Mail AO 450 form. | | | | | OCT. 9, 2003 | |
| | Copy to judge/magistrate judge. | | | | | date mailed notice | |
| CW | courtroom deputy's initials | | | | | MQM mailing initials | |

U.S. DISTRICT COURT
CLERK

'03 OCT -9 PM 4:44

Date/time received in central Clerk's Office



DOCKETED
OCT 1 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT PETIT, et al., Plaintiffs, | ) | |
| v. | ) | No. 90 C 4984 |
| CITY OF CHICAGO, a municipal corporation, Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Presently pending is defendant's bill of costs. This is litigation with a lengthy and complex history. This lawsuit, which was filed in 1990, concerned promotions within the Chicago Police Department ("CPD") and plaintiffs' allegations that White police officers were discriminated against during the process. See generally Petit v. City of Chicago, 239 F. Supp. 2d 761 (N.D. Ill. 2002) ("Petit XI"). The Petit case was not a class action. More than 300 sergeant applicants were individually joined as plaintiffs in the present action, and the Fraternal Order of Police Lodge No. 7 ("FOP") was also a plaintiff. In 1991, all individual defendants were dismissed and only the City of Chicago remained as a defendant. See Petit v. City of Chicago, 766 F. Supp. 607 (N.D. Ill. 1991) ("Petit I"). The promotions at issue in the Petit case were based on a sergeant promotional examination administered from 1985 to 1988. For purposes of

399

discovery, this case was consolidated with other cases involving alleged discrimination in CPD promotions to other positions during the same time period. After the completion of lengthy consolidated discovery proceedings, the cases proceeded separately. In September 1998, following a ruling on defendant's motion for summary judgment, the claims of all but 82 plaintiffs were limited to claims for nominal and emotional damages. See Petit v. City of Chicago, 31 F. Supp. 2d 604 (N.D. Ill. 1998) ("Petit II"). At that time, the FOP was dismissed from the action on grounds of lack of standing and mootness. In May 2001, all but the 82 plaintiffs were dismissed from the action on the ground that, in light of a recent Supreme Court ruling, the other plaintiffs could not be entitled to nominal or emotional damages. See Petit v. City of Chicago, 2001 WL 629306 (N.D. Ill. May 25, 2001) ("Petit V").

When this case went to trial in January 2002, there were 82 remaining plaintiffs[1] and the only remaining defendant was the City of Chicago. It was undisputed that defendant had adjusted the promotional scores of African-American and Hispanic candidates in a manner favorable to those candidates and that defendant also provided Out-of-Rank Promotions to Hispanics. See Jury Instr. [330] 17 ("Defendant does not dispute that it took race and national origin into account when promoting patrol

---

[1] Subsequently, the claims of plaintiff Stanley Surdej were dismissed without prejudice because he was deceased and no appropriate representative was substituted. See Petit XI, 239 F. Supp. 2d at 764 n.7.

officers to sergeant.").[2]  See also Petit II, 31 F. Supp. 2d at
608-10 (undisputed facts on summary judgment).  Defendant
contended that this intentional use of racial criteria was
justified by three compelling interests:  (a) remedying the
effects at the sergeant rank of prior CPD discrimination in
hiring and promotion (the "Discriminatory Effects Interest");
(b) avoiding an adverse impact violation of Title VII of the
Civil Rights Act of 1964 (the "Adverse Impact Interest"); and
(c) the CPD's operational need to have a diverse work force at
the sergeant rank (the "Operational Need Interest").  Defendant
also contended that these interests in combination (the "Combined
Compelling Interest") constituted a compelling interest and that
the "Selection Preferences" employed were narrowly tailored to
the compelling interests.  See Jury Instr. [330] 17-18.

    These issues of liability[3] were tried to the jury.  The
jury was to decide as to each Promotion Date, each Identified
Group, and each type of Selection Preference, whether each
compelling interest existed and, if so, whether the Selection
Preference was narrowly tailored.  See id. at 22, Verdict Form.
As to most every issue, however, the jury was unable to reach a

_____

    [2]Most of the capitalized terms that are used in today's
opinion are terms that were used and defined in the jury
instructions, where an attempt was made to use neutral
terminology, not necessarily the customary legal jargon.  The
terms are also explained in Petit XI.  The bracketed numbers that
are used in today's opinion refer to the Docket Entry number of
documents filed in the District Court.

    [3]Issues of damages were to have been tried separately if
there had been any findings of liability.

- 3 -

unanimous verdict and a mistrial was ultimately declared.  The
jury did unanimously agree and return a verdict as to the
Discriminatory Effects Interest for the promotion of Hispanics on
all five Promotion Dates.  The jury found that that Interest had
been proven to exist, but did not make a unanimous finding as to
whether any of the Score Adjustments or Out-of-Rank Promotions of
Hispanics were narrowly tailored to that interest.

     At the close of the evidence, plaintiffs moved for
judgment as a matter of law on a limited ground.  Plaintiffs'
motion was denied.  Tr. Vol. VIII  at 165 (Jan. 29, 2002).  At
the same time, defendant moved for judgment as a matter of law
based on each of its asserted compelling interests.  Id. at
165-72.  Ruling on defendant's motion was reserved.  Id. at 172.
On February 6, 2002, a mistrial was declared and the jury
discharged.  Plaintiffs thereafter filed a Rule 50(b) motion for
judgment as a matter of law and the court directed that, to the
extent the parties' motions for judgment as a matter of law were
denied, they would alternatively be considered as motions for
summary judgment and the parties were provided the opportunity to
brief the motions as summary judgment motions and submit
additional evidentiary material that was not presented at trial.
In Petit XI, the parties' motions for judgment as a matter of law
were denied.  Id., 239 F. Supp. at 766-86.  On defendant's
summary judgment motion, it was held that defendant was entitled
to summary judgment dismissing all remaining claims based on its
Operational Need Interest.  Id. at 787-94.  It was also held that

defendant would not be entitled to summary judgment based on its Discriminatory Effects and Adverse Impact Interests. Id. at 787. As to plaintiffs' summary judgment motion, it was provisionally held that plaintiffs would have been entitled to summary judgment dismissing the defense based on the Adverse Impact Interest. Id. at 796-800. As to the other two Interests, it was held that plaintiffs would not have been entitled to summary judgment. Id. at 796, 800. Also, a new issue raised by plaintiffs based on a provision of a collective bargaining agreement between police officers and the City was held to not be a basis for either granting summary judgment for plaintiffs or precluding defendant from being granted summary judgment. Id. at 794-95.

Presently pending is defendant's bill of costs. Prior to a few concessions made in response to some of plaintiffs' objections, defendant requests $36,901.59 in costs representing $17,802.14 in transcript costs; $8,105.85 in costs for producing exhibits; $6,919.75 in costs related to witnesses; and $4,073.85 in copying costs.

Costs are to be awarded to the prevailing party as a matter of course. Fed. R. Civ. P. 54(d)(1); Majeske v. City of Chicago, 218 F.3d 816, 824 (7th Cir. 2000), cert. denied, 531 U.S. 1079 (2001). Plaintiffs do not dispute that defendant is a prevailing party entitled to costs. They, however, dispute whether all the claimed costs are reasonable or properly allocated. "Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is

recoverable and (2) if so, whether the amount assessed for that item was reasonable." Majeske, 218 F.3d at 824. Whether a particular expense is recoverable or reasonable may turn on whether it was necessary for use in the case, viewed at the time the expense was incurred. See id. at 825; M.T. Bonk Co. v. Milton Bradley Co., 945 F.2d 1404, 1409-10 (7th Cir. 1991).

The general rule is that any liability for costs is to be joint and several when there are multiple parties on the non-prevailing side. See White v. Sundstrand Corp., 256 F.3d 580, 585-86 (7th Cir.), cert. denied, 534 U.S. 1066 (2001); Concord Boat Corp. v. Brunswick Corp., 309 F.3d 494, 497 (8th Cir. 2002); In re Paoli R.R. Yard PCB Litigation, 221 F.3d 449, 469-70 (3d Cir. 2000); Hartung v. CAE Newnes, Inc., 2002 WL 31972394 *2 (D. Or. July 2, 2002). The burden is on the non-prevailing party to show that the general rule should not be applied. Paoli, 221 F.3d at 469; Hartung, 2002 WL 31972394 at *2. Plaintiffs make no argument that the general rule should not apply.[4] In any event, this is a case where all the plaintiffs affirmatively chose to enter the action, they were all represented by the same attorney, and almost all of the costs that were incurred related to general matters applicable to each plaintiff's claim. Under those circumstances, joint and several liability is appropriate. Cf.

---

[4]Plaintiffs do complain that the FOP should also be liable for costs. However, defendant has not provided notice to the FOP as to the bill of costs and does not request costs from the FOP. It would be inappropriate to enter a judgment for costs as against the FOP. No opinion is expressed as to whether plaintiffs would have a right of contribution as against the FOP for any portion of their liability.

White, 256 F.3d at 586.  However, a distinction should be made between those plaintiffs who were dismissed from the action in May 2001 and the other 81[5] plaintiffs who went to trial.  It would be inappropriate to require that the previously dismissed plaintiffs pay costs related to a trial and other proceedings that occurred after they were dismissed from the action.  See Paoli, 221 F.3d at 471 n.10;  Hartung, 2002 WL 31972394 at *2-3. Costs incurred after May 25, 2001 will be awarded as against the 81 trial plaintiffs only.

No costs will be awarded as against plaintiff Patrick Goodman whose claim was voluntarily dismissed in May 1992 nor plaintiffs Andrew Christopherson, Denise Liska,[6] Kenny Lunsford, Stephen Gawrys, George Meyers, and Dennis Shaw whose claims were voluntarily dismissed in March 1997.

Plaintiffs argue that costs related to certain issues should be excluded.  Because the grant of summary judgment was based on the Operational Need Interest only, plaintiffs contend that expenses related only to the Discriminatory Effects Interest or Adverse Impact Interest should not be awarded.  They contend this is particularly true as regards expenses related to the Adverse Impact Interest since it was provisionally held that the Adverse Impact Interest was subject to being resolved in

---

[5]No costs will be awarded as against Surdej, who was dismissed without prejudice and for whom an appropriate representative of his estate has not been identified.

[6]Although an order was entered voluntarily dismissing her claim, the docket does not indicate that Liska was ever a plaintiff in the case.

plaintiffs' favor on summary judgment. As to the Discriminatory Effects Interest, it was provisionally held that disputed factual issues remained regarding that Interest.

Defendant contends no such allocation should be made, citing Majeske, 218 F.3d at 824-26, which was one of the cases consolidated with Petit for purposes of discovery. Majeske concerned promotions to detective that occurred from 1990 through 1992. See Majeske, 218 F.3d at 818-19. In that case the City prevailed based on a discriminatory effects interest defense, see id. at 822, and the City points to the fact that no reduction of costs was made based on costs related to other defenses. However, there is no indication that such an allocation issue was even raised. See id. at 824-26. Majeske, therefore, does not stand for the proposition that an award of costs cannot be reduced based on costs related to issues that were either not reached or resolved against the prevailing party.

"The general rule . . . is that a district court, in exercising its equitable discretion, may apportion costs between the prevailing and nonprevailing parties as it sees fit." Paoli, 221 F.3d at 469. In Switzer Brothers, Inc. v. Chicago Cardboard Co., 252 F.2d 407, 412 (7th Cir. 1958), the successful appellee devoted the majority of its efforts to an alternative ground for affirmance that had not been reached by the district court and was not necessary to be reached by the court of appeals. Under those circumstances, the Seventh Circuit held that, although the prevailing party, the appellee was not entitled to an award of

all its costs of appeal. The present situation has some similarities. Here, the Adverse Impact Interest was not an issue that was not reached, but one on which defendant was entirely unsuccessful. The Discriminatory Effects Interest was addressed in Petit XI, and previous opinions as well, and also tried, but without reaching a complete verdict. However, because the case was resolved on other grounds, it was unnecessary to retry and fully resolve the defense based on the Discriminatory Effects Interest. During the course of this litigation, though, the Discriminatory Effects Interest was defendant's primary defense and perhaps the defense for which the largest portion of related costs were incurred. For example, the statistical evidence presented through Bernard Siskin was primarily, if not exclusively, relevant to the Discriminatory Effects Interest.

Although the Discriminatory Effects Interest defense was never fully resolved in defendant's favor, it was also not fully resolved in plaintiffs' favor. It was an appropriate issue to be raised as a defense and involved substantial factual and legal disputes. Since a substantial and appropriate defense to the claims made by plaintiffs, defendant should not be deprived of its related costs because it was able to prevail on a different defense thereby rendering the Discriminatory Effects Interest defense moot before it could be retried. Cf. United States v. Davis, 87 F. Supp. 2d 82, 93 (D.R.I. 2000). No reduction of the award of costs will be made based on expenses related to the Discriminatory Effects Interest.

The Adverse Impact Interest defense is different. It was provisionally held that this defense lacked merit. While it was a possible defense, see Petit XI, 239 F. Supp. 2d at 796-97, the defense was not supported by the evidence. The undisputed evidence was clear that the City aimed for near 100% parity in promotions, not narrowly tailoring the promotions to satisfy the 80% Rule that was all that would be necessary to avoid an adverse impact violation of Title VII. See id. at 797-800. This was not a defense for which the City had substantial factual support. To the extent any costs can be identified that relate only to the Adverse Impact Interest, such costs will not be awarded.

Plaintiffs contend that defendant should not be entitled to any expenses incurred during the trial since a mistrial occurred and defendant instead prevailed on summary judgment. The trial testimony, however, was used in ruling on the summary judgment motion. Although a substantial portion of the trial testimony may have been duplicative of testimony previously given in depositions, it would have been inappropriate to ignore the trial testimony since it was not precisely the same as the deposition testimony and, on at least some factual issues, it was more developed or more to the point than earlier deposition testimony. Moreover, even when a mistrial occurs or a trial verdict is vacated, the party that ultimately prevails, whether by retrial or other procedures, is generally awarded costs from the first trial. Manildra Milling Corp. v. Ogilvie Mills, Inc., 76 F.3d 1178, 1184 (Fed. Cir. 1996); Meder v. Everest & Jennings,

Inc., 553 F. Supp. 149, 150 (E.D. Mo. 1982); Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, <u>Federal Practice & Procedure:</u> <u>Civil 3d</u> § 2667 at 206-07 & n.4 (1998). To the extent expenses incurred during the trial are otherwise appropriately awarded as expenses, they will be awarded.

Plaintiffs complain that certain expenses were incurred during the consolidated discovery proceedings and were not properly allocated to the other cases. Plaintiffs contend only one-seventh of the expenses should be awarded because seven cases were consolidated for discovery. Because all of the claimed discovery costs would have been incurred in full in <u>Petit</u> even if there had been no other cases, defendant could have claimed the entire expenses that have not otherwise been reimbursed in the other cases. To the extent otherwise appropriately awardable, the one-fourth or one-half that defendant requests will be awarded.

As to in-house copying costs, plaintiffs object to defendant's request of $.20 per page. In-house copying charges generally should not exceed those that would be charged by an outside copying service. <u>See</u> <u>Manley v. City of Chicago</u>, 236 F.3d 392, 398-99 (7th Cir. 2001); <u>Haroco, Inc. v. American National</u> <u>Bank & Trust Co. of Chicago</u>, 38 F.3d 1429, 1441 (7th Cir. 1994). Although some cases from this district have allowed up to $.20 per page, <u>see</u> <u>RK Co. v. Harvard Scientific Corp.</u>, 2003 WL 22078328 *3 (N.D. Ill. Sept. 4, 2003), plaintiffs point to the $.07 per page rate that Kinko's charged in 1996 and the $.10 per

page maximum rate currently allowed by the Seventh Circuit for the costs of briefs. Copying costs will be awarded at a rate of $.10 per page. Cf. Riley v. UOP LLC, 258 F. Supp. 2d 841, 843 (N.D. Ill. 2003); Tirapelli v. Advanced Equities, Inc., 222 F. Supp. 2d 1081, 1085 (N.D. Ill. 2002); Holmes v. Nigro, 2002 WL 31248524 *2 (N.D. Ill. Oct. 7, 2002); Antonson v. United Armored Services, Inc., 2002 WL 908424 *2 (N.D. Ill. May 6, 2002).

With these general principles in mind, the specific requests and objections will be considered.

Copy Costs

Defendant concedes that items for 73 C 2080[7] for dates of May 24, 1988 through April 11, 1989 should not have been requested. No reimbursement will be allowed for those items.

No costs will be allowed for a copy of the notice of appeal dated April 11, 1995 that is listed in the grouping for court papers filed in 91 C 668.

Plaintiffs object to the entire grouping labeled Document Productions and totaled as $750.05, except two items on November 14, 1990 that are identified as in camera review documents. The items are generally not identified other than as "documents produced." One large item, undated, is labeled as "various candidate lists." Plaintiffs contend they paid for copies of many documents that were produced, providing receipts to show the payments they made. Some of these are identified as

---

[7]The itemized list of copy costs are in date order in various different groupings, with no page numbering.

copies of candidate lists. Defendant contends the receipts do
not show that they match up with any of defendant's listed items,
other than possibly the April 16, 1992 item that defendant
withdraws. However, any inability to match the receipts to the
listed items is due to defendant's lack of specificity. No costs
will be awarded for any of the items in this category other than
the in camera documents.

With the aforementioned adjustments being made and using
the rate of $.10 per page, the total costs for copying is
$1,621.90. $593.00 of this is for items copied after May 25,
2001.

Exhibits

The City seeks $8,105.85 in costs for producing exhibits,
consisting of exhibit books for jurors, demonstrative exhibits,
blow-ups, and other graphic aids. As previously discussed,
plaintiffs' general objection that the City is not entitled to
costs related to a mistrial is without merit. Plaintiffs also
contend that demonstrative evidence is not an awardable cost.[8]
The Seventh Circuit, however, has held that such expenses are
awardable. Wahl v. Carrier Manufacturing Co., 511 F.2d 209, 217
(7th Cir. 1975); W.F. & John Barnes Co. v. International
Harvester Co., 145 F.2d 915, 918 (7th Cir. 1944), cert. denied,
324 U.S. 850 (1945); Phillips v. Cameron Tool Corp., 131 F.R.D.

---

[8]Other than the general objection as to expenses related
to trial, plaintiffs do not object to $970.75 for the
photocopying and binding necessary to put together exhibit books
for each juror.

151, 154 (S.D. Ind. 1990). Where the expense is substantial and the party is concerned about subsequent reimbursement, it is advisable, but not required, to obtain advance approval from the court. Wahl, supra; Phillips, supra. Still, since such costs are not specifically provided for in 28 U.S.C. § 1920, the awarding of such costs should be done sparingly and only if shown to be particularly necessary for the case and not merely illustrative or duplicative of evidence in the case. Wahl, supra; Brook, Weiner, Sered, Kreger & Weinberg v. Coreg, Inc., 1995 WL 144554 *4-5 (N.D. Ill. March 30, 1995); Phillips, supra; Brown & Williamson Tobacco Co. v. Jacobson, 1987 WL 20431 *6-7 (N.D. Ill. Nov 24, 1987).

During, its opening statement at trial, defendant used blowups showing "uncontested facts." Defendant seeks $1,400.00 in costs for these blowups. These blowups were not shown to plaintiffs or the court ahead of time and were objected to by plaintiffs. The jury instructions thereafter contained instructions as to "established facts" that were different in form from the facts contained in the blowups. This was not a reasonable or necessary expense. These costs will not be allowed.

Defendant seeks $382.50 for an enlargement of a timeline of relevant events during the time period relevant to this case. The timeline was initially provided to the jury in their books of exhibits, but later excluded from evidence. The enlarged version was not essential to the case. This cost will not be allowed.

Plaintiffs object to $4,213.20 for maps, with color overlays, showing demographic concentrations in the City. This exhibit was not necessary for defendant's case. The same evidence was presented in other form as well. This cost will not be awarded.

$306.00 for bar charts of pass rates and the EEOC Guidelines will not be allowed since they relate to the Adverse Impact Interest only.

Defendant seeks $459.00 for line graphs and pie charts related to the Discriminatory Effects Interest. These graphs and charts merely illustrated points contained in the testimony of expert witnesses. Such expenses are not compensable.

Defendant requests $374.40 for a blowup of the complex verdict form that was used in this case. The blowup was used during closing argument. Given the various findings that had to be made by the jury, this exhibit was reasonable and necessary for explaining to the jurors the various findings that defendant was arguing they should make. This cost will be allowed.

$970.75 for the jury books and $374.50 for the blowup of the verdict form will be allowed for a total of $1,345.15 in costs for producing exhibits. All these expenses were incurred after May 25, 2001.

Transcripts

Plaintiffs contend the Local Rules limit transcript costs to those transcripts used for a motion for new trial, amended findings, or for an appeal. That is not what the Rule provides.

Local Rule 54.1(b) provides in part: "Subject to the provisions of Fed. R. Civ. P. 54(d), the expenses of any prevailing party in necessarily obtaining all or any part of a transcript for use in a case, for purposes of a new trial, or amended findings, or for appeal shall be taxable as costs against the adverse party." The purposes listed by plaintiff are those purposes in addition to "use in a case," not the only purposes for which the transcripts could be used. The "use in a case" language tracks the language of 28 U.S.C. § 1920(2), the statutory basis for awarding costs. Transcript costs for depositions cited in motions or used to prepare motions are appropriate costs. Cengr v. Fusibond Piping Systems, Inc., 135 F.3d 445, 455 (7th Cir. 1998); Federal Practice & Procedure § 2676 at 423-24. Costs related to depositions are not limited to depositions that are read at a trial. Hudson v. Nabisco Brands, Inc., 758 F.2d 1237, 1243 (7th Cir. 1985). Trial transcripts used for post-trial or other motions are compensable. Federal Practice & Procedure § 2677 at 447. Transcript costs for court hearings on pretrial matters, including discovery issues, may be properly awarded as costs. See Maris Distributing Co. v. Anheuser-Busch, Inc., 2001 WL 862642 *2 (M.D. Fla. May 4, 2001); Association of Minority Contractors & Suppliers v. Halliday Properties, Inc., 1999 WL 551903 *3 (E.D. Pa. June 24, 1999); BASF Corp. v. Old World Trading Co., 1992 WL 229473 *2 (N.D. Ill. Sept. 11, 1992).

Plaintiffs object to the charges for the trial transcript, which were obtained on an expedited or daily basis.

Defendant contends the transcript was needed to have a record of
the rulings on the numerous objections that were raised during
the trial.  It is recognized that, in some cases, daily
transcripts are reasonable and necessary and therefore fully
compensable as costs.  See Majeske, 218 F.3d at 825 n.3.  This
was not such a case.  While the attorneys certainly were
combative, daily or expedited transcripts were not necessary in
order for the trial to proceed to completion.  However, although
the transcripts were not necessary during the trial, they were
necessary for ruling on the Rule 50 and summary judgment motions.
Defendant will be awarded the costs of the trial transcripts at
the regular rate of $3.00 per page.  The extra $1,644.00 charge
for a transcript of Robert Joyce's testimony is already included
in the other trial transcript charges and will not be
additionally allowed.  Plaintiffs also contend that some of the
testimony was relevant for the Discriminatory Effects Interest
only.  As previously discussed, such costs are compensable.
Plaintiffs contend costs related to Joyce's testimony should not
be compensated since he testified concerning the Adverse Impact
Interest.  His testimony, however, was not limited to that issue
and plaintiffs do not identify specific pages of his testimony
that relate to that issue only.  Because none has been
identified, no reduction will be made based on any testimony
applying to the Adverse Impact Interest only.  The total
allowable cost for the trial transcript is $5,676.00.

Defendant requests $1,083.62 for transcripts of court hearings in the consolidated discovery proceedings. Such transcript costs are appropriate in this case which involved complex discovery matters. Cf. Maris, 2001 WL 862642 at *2; Halliday, 1999 WL 551903 at *3. Plaintiffs object that the particular hearings are not identified. Although the specific dates are not listed in defendant's itemized chart, the accompanying bills shows the dates of all the hearings. This cost will be allowed.

As to deposition costs, defendant concedes that it has already been compensated for the Burauer deposition and therefore withdraws that part of its request. Plaintiffs have no specific objections as to any of the other depositions.[9] The depositions of Bobko and Sneed, however, were charged at $3.30 per page. Those amounts will be recomputed at $3.00 per page. See N.D. Ill. Loc. R. 54.1(b). The amount that will be awarded for depositions is $4,410.47

The total amount that will be awarded for court and deposition transcripts is $11,170.09. All these expenses were incurred prior to May 25, 2001 except the $5,676.00 for trial transcripts.

Witness Expenses

Plaintiffs object that certain aspects of the witness expenses are excessive. The witness expenses permitted by

---

[9]Plaintiffs' objection as to allocations among the seven cases that were consolidated for discovery have previously been discussed.

28 U.S.C. § 1920(3) are limited to those permitted by 28 U.S.C. § 1821. <u>Crawford Fitting Co. v. J. T. Gibbons, Inc.</u>, 482 U.S. 437, 441 (1987); <u>Majeske</u>, 218 F.3d at 825-26.

Plaintiffs object that the witnesses' airfares could have been less expensive if the tickets had been purchased in advance. Section 1821(c)(1) limits airfare costs to "the most economical rate reasonably available." Although, the trial in this case was set approximately 19 days ahead of the beginning date and the date was not thereafter changed, trial dates often change and it is difficult to know exactly when and for how long a witness will testify, even when the parties are flexible about the order of witnesses. It was reasonable for defendant to book the air flights on short notice rather than possible advance purchase rates suggested by plaintiff.[10] It has not been shown that the airfare rates paid on behalf of the witnesses were not reasonable. <u>See</u> <u>Moore v. University of Notre Dame</u>, 22 F. Supp. 2d 896, 914 (N.D. Ind. 1998). The airfare costs that are requested will be awarded.

Plaintiffs also complain that the witnesses did not stay in less expensive hotels. Section 1821(d)(2) limits hotel and meal costs to the per diem rate for the locale as established by the General Services Administration. <u>Fait v. Hummel</u>, 2002 WL 31433424 *3 (N.D. Ill. Oct. 30, 2002); <u>Eastern Trading Co. v.</u>

---

[10]Plaintiffs assert in their brief that their attorney contacted a travel agent and was told tickets purchased in advance would have been cheaper. Neither the brief nor any affidavit specifies the terms or costs of such advance purchases.

- 19 -

Refco, Inc., 1999 WL 529569 *3 & n.2 (N.D. Ill. July 20, 1999).
As of January 2002, the per diem rate for Chicago was $205 per
day.  Plaintiffs do properly object to paying three nights of
hotel expenses for Cooper, who testified on only one day.  The
amount for Cooper's hotel would be reduced from the requested
$620.46 to $208.62.  $34.71 is also claimed for his meals.  The
costs for Cooper's hotel and meals, however, will be limited to a
total of $205.00.  Potter's costs for a hotel and meals, which
otherwise totaled $211.37, will also be limited to $205.00.

Making the aforementioned adjustments, witness expenses
in the amount of $6,463.21 will be awarded.  All these expenses
were incurred after May 25, 2001.

The total costs to be awarded are as follows:

|             | Total       | before 5/25/01 | after 5/25/01 |
|-------------|-------------|----------------|---------------|
| Transcripts | $11,170.09  | $5,494.09      | $ 5,676.00    |
| Exhibits    | 1,345.15    | 0.00           | 1,345.15      |
| Witnesses   | 6,463.21    | 0.00           | 6,463.21      |
| Copying     | 1,621.90    | 1,028.90       | 593.00        |
| Total       | $20,600.35  | $6,522.99      | $14,077.36    |

IT IS THEREFORE ORDERED that defendant City of Chicago's
bill of costs is granted in part and denied in part.  The Clerk
of the Court is directed to enter judgment in favor of defendant
City of Chicago and against all plaintiffs, jointly and
severally, except plaintiffs Fraternal Order of Police Lodge
No. 7, Stanley Surdej, Patrick Goodman, Andrew Christopherson,
Denise Liska, Kenny Lunsford, Stephen Gawrys, George Meyers, and

Dennis Shaw, in the amount of $6,522.99 representing costs incurred prior to May 25, 2001. The Clerk of the Court is further directed to enter judgment in favor of defendant City of Chicago and against plaintiffs Frank Aljinovic, John Bobko, James Bonk, John Burke, John Coghlan, Phillip Collins, James Cosgrove, Craig Cristoe, David Crowell, Ralph Culver, James Cummings, Patrick Darcy, James Darling, Lawrence Duggan, Sandra Engemann, Alan Falasz, Barbara Fiester, William Filipiak, Anthony Finocchio, John Fischer, Lenore Flaherty, Jerome Fluder, Charles Flynn, Patrick Forrester, Gerald Ganey, George Gottlieb, Anthony Graffeo, Edward Griffin, John Grill, Michael Groth, Gerald Hansen, Jacob Jachna, Kenneth Johnson, Robert Kero, James Kingsley, John Kocianis, Evelyn Kolerich, Edward Koop, William Kovacs, James Kuyken, Donald La Bresh, Thomas Lonergan, H.A. McCarthy, James McDonough, James McNally, Michael Magliano, Landon Matheson, Terence Mathews, Pasquela Mattera, William Moore, Robert Navigato, Anthony Niemotka, David Nowak, James O'Connell, Francis Pell, Anthony Pierotti, John Posluszny, James Povolo, Donna Raucci, Cora Roberts-Kurpis, Michael Rowan, Richard Rubin, Steven Schorsch, Anthony Serritella, Edward Shannon, Richard Sherman, Alan Stakis, Michael Stather, Lawrence Strzechowski, Jerold Swarbrick, Allen Szudarski, William Town, Lawrence Tuider, John Turney, Louis Vernagallo, Donald Vetrovec, George Webber, William Whitters, Darlene Wicht, William Woitowich, and John Zotto, jointly and severally, in the amount of $14,077.36 representing costs incurred after May 25, 2001.

Enforcement of these judgments are stayed until the appeal of the judgment dismissing this case becomes final.

ENTER:

_William T. Hart_

UNITED STATES DISTRICT JUDGE

DATED: OCTOBER 9 , 2003